IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| TJ RHODES, | ) | |
| Plaintiff, | ) ) ) | 6:16-cv-01502-JO |
| v. | ) ) | OPINION AND ORDER |
| COUNTY OF MARION, et al., | ) ) ) | |
| Defendants | ) ) | |

JONES, District Judge:

Plaintiff TJ Rhodes, acting pro se, brought this civil rights action under 42 U.S.C. § 1983 against Marion County Fire District #1 (MCFD) and its employees Terry Riley, Jakob Beutler, and Aaron Iwaniw (collectively "the MCFD defendants") and the Marion County Sheriff's Office (MCSO) and its employees Sheriff Jason Myers and Deputy Jonathon Gadberry (collectively "the MCSO defendants"). Rhodes alleges defendants violated his rights by assaulting and refusing him medical treatment when they responded to a 911 call from his girlfriend reporting he was experiencing chest pain. The matter is before the court on defendants' motions for summary judgment [# 44, # 53]. For the following reasons, the motions are granted as to all defendants.

-1-   OPINION AND ORDER

## BACKGROUND

The following factual background is undisputed. On December 23, 2014, Rhodes and his girlfriend Cynthia Brown visited Izzy's restaurant. When they left, plaintiff experienced chest pain and he told Ms. Brown he thought he was having a stroke or a heart attack. On numerous previous occasions, Rhodes had experienced similar symptoms and had been transported by ambulance for emergency treatment. Ms. Brown called 911 and reported that Rhodes was experiencing chest pain and that she and Rhodes were intoxicated.

MCFD personnel, including defendants Beutler and Iwaniw, responded to the call. Ms. Brown led the MCFD responders into Rhodes's residence and again told them that Rhodes was intoxicated and experiencing chest pains. The MCFD responders found Rhodes unresponsive in a fetal position with his shirt pulled over his head. When they attempted to obtain information from Rhodes, he exhibited signs of impaired decision making capacity and alcohol intoxication and appeared to be in urgent need of medical care.

Rhodes did not cooperate when the MCFD responders tried to obtain information from him about his condition. He leaped to his feet, yelled angrily at them and shoved defendant Iwaniw. Rhodes then charged at them, swinging his fists. He struck defendant Beutler several times in the head. Defendants Beutler and Iwaniw restrained Rhodes on the floor to protect themselves, but Rhodes bit Beutler on the forearm and spat in their faces. Defendant Beutler pushed Rhodes's head away to avoid further spitting. While restrained, Rhodes remained agitated, yelling threats and racial expletives at the MCFD responders. Rhodes punched Beutler in the side of the head. Ms. Brown then reported that Rhodes had hit and threatened her before the MCFD responders arrived and that she feared further violence against her if Rhodes were released.

Meanwhile, defendant Deputy Gadberry arrived to help the MCFD responders control Rhodes so that he could be treated. Defendant Gadberry knew that the MCFD responders had been dispatched to assist an intoxicated male who was experiencing chest pains. Gadberry smelled a strong odor of alcohol coming from Rhodes. Rhodes was agitated and continued to scream curses and threats at the MCFD responders trying to assist him. Defendant Gadberry placed Rhodes in handcuffs and told him he was being detained while Gadberry investigated the incident.

While defendant Gadberry escorted Rhodes to a patrol vehicle, Rhodes tried to pull away several times and yelled profanities, racial expletives and threats at Gadberry. Defendants Beutler and Iwaniw attempted to complete their medical assessment while Rhodes was sitting in the patrol vehicle, but Rhodes continued to be uncooperative and scream at them. When defendant Iwaniw attempted to place an EKG lead on Rhodes's chest, Rhodes tried to bite Iwaniw's hand. Defendant Gadberry then grasped Rhodes's chin and pushed it up to prevent him from biting Iwaniw. Ultimately, Rhodes prevented Iwaniw and Beutler from properly assessing his possible medical issues. Defendant Gadberry then transported Rhodes to the Marion County Jail.

Based on the events described, Rhodes was charged with Assault 3, Aggravated Harassment, and Attempted Assault 3. On June 7, 2015, Rhodes entered a guilty plea to Assault 3 and Aggravated Harassment, both Class C felonies. In doing so, Rhodes confessed that, on December 23, 2014, he had caused physical injury to a medical service provider acting in the course of his duties and had propelled saliva on a public safety officer acting in his official capacity. Based on the guilty plea, Rhodes was convicted and is now serving a sentence of incarceration at Santiam Correctional Institution.

## LEGAL STANDARD

The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party and inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630-31 (9th Cir. 1987).

## DISCUSSION

In his first amended complaint, Rhodes brought eight claims alleging violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as claims of negligence and assault and battery under state law. Of these, three claims relate to all defendants, one relates only to the MCFD defendants, and four relate only to the MCSO defendants.

### I. MCFD defendants

Rhodes alleges the MCFD defendants violated his constitutional rights by subjecting him to excessive force, false imprisonment, cruel and unusual punishment, and failure to provide appropriate medical care. These claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). Rhodes entered a plea petition in which he confessed the factual basis that supported his conviction of Assault 3 and Aggravated Harassment. The aggressive assaultive behavior that

formed the basis of Rhodes's felony convictions is inextricably intertwined with the MCFD defendants' defensive actions and futile attempts to provide medical care. These are the actions that Rhodes alleges violated his rights and form the basis of his claims under Section 1983. Accordingly, Rhodes's Section 1983 claims are barred and the MCFD defendants are entitled to judgment. Alternatively and in addition, each of Rhodes's claims against the MCFD defendants fails for the following reasons.

Rhodes alleges the MCFD defendants violated his Fourth Amendment right to be free from excessive force. Rhodes's guilty plea and the undisputed facts establish that Beutler and Iwaniw acted defensively while reasonably and objectively fearing for their safety and that of Rhodes. They reasonably and objectively believed Rhodes required urgent medical care and appropriately attempted to help him. Their use of force in attempting to restrain and treat Rhodes was proportionate to the risks posed by his aggressive assaultive behavior. Accordingly, Rhodes failed to state a constitutional claim of excessive force. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).

Similarly, Rhodes failed to state a claim for violation of his Fourth Amendment right to be free from unreasonable seizure. He alleges the MCFD defendants falsely imprisoned him while attempting to give him medical treatment. These defendants did not restrain Rhodes for law enforcement purposes to interfere with his liberty. Their actions were objectively reasonable attempts to provide him with apparently necessary urgent medical care in response to a 911 emergency call. Accordingly, they did not unreasonably seize Rhodes in violation of the Fourth Amendment.

Rhodes failed to state a claim for violation of his Fifth Amendment rights because none of the MCFD defendants are federal actors. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

Rhodes failed to state a claim for cruel and unusual punishment under the Eighth Amendment because the alleged actions of the MCFD defendants were not punishment following a conviction and sentence. The Eighth Amendment prohibition of cruel and unusual punishment applies to treatment of a convict after a formal adjudication of guilt. *Graham v. Conner*, 490 U.S. at 393 & n. 6; *Lee*, 250 F.3d at 686.

Rhodes makes the contradictory contentions that the MCFD defendants on the one hand disregarded his refusal of medical treatment and on the other hand failed to provide him proper medical treatment, all in violation of his Fourteenth Amendment rights. The MCFD defendants objectively and reasonably believed that Rhodes required medical care and lacked the capacity to competently make decisions. They made reasonable efforts to assess his medical needs, despite his aggressive assaultive behavior. These actions do not amount to an arbitrary deprivation of rights sufficient to state a due process violation under the Fourteenth Amendment. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (9th Cir. 1998); *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Rhodes seeks to hold MCFD liable for the actions of Iwaniw and Beutler because of unspecified deficiencies in MCFD's policies and training. This claim fails because, as shown previously, none of Iwaniw's or Beutler's actions deprived Rhodes of a constitutionally protected interest. In addition, Rhodes did not demonstrate that MCFD maintains a policy or practice to deprive him of his constitutional rights. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Oviat v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Rhodes brings claims under Section 1983 against defendants Riley, Iwaniw and Beutler in their individual capacities. Public officials in their individual capacity are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that is so clearly established that any reasonable official in the same circumstances would know his conduct violated the right. *City of San Francisco v. Sheehan*, 135 U.S. 1765, 1774 (2015). Rhodes has not alleged any action by defendant Riley. While he has alleged that defendants Iwainiw and Beutler used force against him, he has also admitted that he engaged in assaultive behavior against them that would justify their defensive actions. Under these circumstances, Riley, Inwaniw and Beutler are entitled to qualified immunity because they could not have known that any statutory or constitutional right clearly required them to act differently. *Sheehan*, 135 S.Ct. At 1778.

Rhodes apparently alleges a state law claim of assault and battery. This claim fails because the MCFD defendants used an objectively reasonable amount of force to defend themselves from Rhodes's assault and to restrain him to assess his medical needs. Rhodes offers no evidence that Iwaniw or Beutler intended to cause harm or injury; the evidence strongly supports that they acted in good faith to protect his safety as well as their own. Rhodes's guilty plea establishes that he made an unprovoked attack on Iwinaw and Beutler and that they responded defensively. Accordingly, there is no evidence that these defendants had the specific intent required for an assault and battery claim. *Olsen v. Deschutes Cnty.*, 204 Or. App. 7, 24 (2006); *Ballard v. City of Albany*, 221 Or. App. 630, 642 (2008).

Rhodes purports to bring a common law negligence claim against the MCFD defendants. A common law negligence claim may be maintained separately from a claim under Section 1983 only if the negligence claim rests on different facts from the facts on which the Section 1983 claim is based. *Shilo v. City of Portland*, 2005 WL 3157563. Rhodes's negligence claim fails because he alleges no facts separate from those that support his excessive force claim under Section 1983. In addition, under Oregon law, a plaintiff may not allege facts constituting an intentional tort in support of a claim of negligence. *Kasnick v. Cooke*, 116 Or. App. 580 (1992). Rhodes's negligence claim fails for the additional reason that he bases his negligence claim on the exact same factual allegations as his claims of excessive force and assault and battery.

## II. MCSO defendants

Rhodes alleges defendant Deputy Gadberry violated his rights by placing him in a patrol vehicle with a police service dog, handcuffing him while he was experiencing a diabetic seizure, failing to advise him of his *Miranda* rights, and unlawfully imprisoning him. Rhodes alleges defendant Sheriff Myers violated his rights by failing to provide Rhodes with medical care and failing to train deputies in proper use of force when deploying a police service dog. Rhodes contends these actions violated his rights under the Fourth, Eighth, and Fourteenth Amendments.

As with his claims against the MCSD defendants, Rhodes's Section 1983 claims against defendant Deputy Gadberry are barred under *Heck v. Humphrey*. Deputy Gadberry detained Rhodes to facilitate assessing his medical needs and to limit his assaultive behavior against Iwaniw and Beutler. The actions Rhodes complains of, *viz.* being handcuffed, placed in a patrol vehicle, and detained, are all inextricably related to the assault and harassment for which he was convicted. Accordingly, Rhodes's Section 1983 claims against defendant Gadberry are barred and Gadberry is

entitle to judgment. *Heck v. Humphrey*, 512 U.S. 477. In addition, his claims fail for the following reasons.

Rhodes contends deputy Gadberry violated his rights by using excessive force when placing him in handcuffs and putting him in a patrol vehicle with a police service dog. He further claims he was unlawfully detained. Rhodes has no claim for unlawful detention because Gadberry had probable cause to arrest him for the assault and harassment to which he later pled guilty. Rhodes has no excessive force claim from being placed with the police service dog because the dog was kept in a separate compartment of the vehicle and did not exert any force on Rhodes. Furthermore, none of defendant Gadberry's alleged actions violated clearly established statutory or constitutional law, and he is therefore entitled to qualified immunity. *Sheehan*, 135 U.S. at 1774; *Pearson v. Callahan*, 555 U.S. 223, 243 (2009).

Rhodes alleges that defendant Gadberry failed to read him *Miranda* warnings at the time of his arrest. The proper remedy for a violation of *Miranda* is the exclusion of evidence derived from such a violation. No evidence is at issue in this case. *Miranda* does not provide a basis for recovery under 42 U.S.C. § 1983.

Rhodes also alleges the Marion County Jail failed to provide him with appropriate medical treatment after he was transported from the scene of his assault on Iwaniw and Beutler. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before commencing an action under 42 U.S.C. § 1983.

The PLRA says that,

> [n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a mandatory prerequisite and not a discretionary matter for the court. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Claims for which an inmate has failed to exhaust administrative remedies cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The Marion County Jail has an internal grievance process through which a prisoner can submit complaints and seek resolution of issues regarding conditions of confinement, including issues involving medical care. Rhodes did not file a grievance related to his claim that he received inappropriate medications or treatment. Accordingly, his claim fails. Generally, when the district court finds that a prisoner failed to exhaust all available administrative remedies, it should dismiss without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). As shown elsewhere in this opinion, however, there is no genuine issue of any material fact regarding the merits of Rhodes's claims and the MCSO defendants are entitled to judgment.

Rhodes alleges that Sheriff Myers individually violated the Fifth and Eighth Amendments by negligently failing to provide him with medical care. This claim fails because Rhodes did not specify any direct involvement of any kind by Sheriff Myers. In addition, the claim fails because Rhodes did not comply with the PLRA. *McKinney v. Carey*, 311 F.3d at 1199. As a Fifth Amendment claim, it fails because defendant Myers is not a federal actor. *Lee*, 250 F.3d at 687. As an Eighth Amendment claim, it fails because the alleged factual circumstances occurred before Rhodes was a convict following a formal adjudication of guilt. *Graham v. Conner*, 490 U.S. at 393 & n. 6; *Lee*, 250 F.3d at 686.

Furthermore, deliberate indifference under the Eighth Amendment is a culpable state of mind on the part of the health care provider that is equivalent to "criminal recklessness." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Inadvertent or negligent failure to provide adequate medical care is not sufficient to state a claim under section 1983. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The health care provider must know of and disregard an excessive risk to the inmate's health or safety. *Farmer* at 837. The plaintiff must show that the defendant health care provider's action or failure to act in response to a serious medical need was purposeful and caused harm. *Jett*, 439 F.3d at 1096. Here, Rhodes alleges only that Sheriff Myers acted negligently. Rhodes has not named an individual medical care provider at the jail or alleged facts that would support a finding that this unidentified individual acted with deliberate indifference to his medical needs. Instead, he has alleged facts showing that he belligerently prevented treatment and tried to harm those who attempted to help him.

Rhodes alleges Sheriff Myers failed to properly train MCSO deputies in the proper use of force and deployment of police service dogs. This claim fails because Rhodes has not shown that Deputy Gadberry's actions deprived him of a constitutionally protected interest or that MCSO maintains a policy or practice to deprive him of his constitutional rights. *Monell*, 436 U.S. at 694; *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

## CONCLUSION

Resolving all reasonable doubt as to the existence of a material factual issue in Rhodes's favor and viewing all reasonable inferences that can be drawn from the facts in the light most favorable to him, I am satisfied that Rhodes has failed to designate facts showing an issue to be resolved at trial and that defendants are entitled to judgment as a matter of law.

## ORDER

For the foregoing reasons, defendants' motions for summary judgment [# 44, # 53] are GRANTED. Any remaining pending motions are denied as moot.

IT IS SO ORDERED.

DATED this 3rd day of October, 2018.

/s/ Robert E. Jones
Robert E. Jones
United States District Judge